IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CLEMMIE L. JOHNSON,

                Plaintiff,

   v.                                                   OPINION and ORDER

DANIEL GOFF, TRINA KROENING-SKIME, and                21-cv-606-wmc
MARK KARTMAN,

                Defendants.

---

Plaintiff Clemmie Johnson, who represents himself, is proceeding on First Amendment free exercise and Eighth Amendment deliberate indifference claims against three officials at the Wisconsin Secure Program Facility ("WSPF"). Specifically, Johnson's claims that WSPF Chaplain Daniel Goff, former Security Director Mark Kartman, and Program Supervisor Trina Kroening-Skime wrongfully refused to provide him with Ramadan meal bags in 2021, even though they were aware that he was on a special diet, wanted to participate in Ramadan, and could not obtain a nutritionally-sufficient diet without the meal bags. (*See* dkt. ##16, 20.) In their answer to the complaint, defendants admit that Johnson submitted a request for meal bags on the second day of Ramadan, April 13, 2021, but maintain that he was not placed on the 2021 Ramadan participant list because his request was not submitted 60 days before its start, as required by both the written policies adopted by the Department of Corrections ("DOC") and WSPF. (*See* dkt. #27, at ¶¶ 13, 16-17.)

Defendants have moved for sanctions against the plaintiff on the grounds that he forged Goff's handwritten acknowledgement on a memorandum that purported to confirm

Johnson's expected participation in Ramadan. (Dkt. #50.) As part of his response to that motion, Johnson filed a motion for the court to appoint a handwriting expert (dkt. #57) and assist in recruiting counsel to represent him (dkt. #58). After considering detailed affidavits submitted by the parties (dkts. ##51-53, 56, 56-1 to 3 and -11), the court held an evidentiary hearing on these motions on January 24, 2025, at which plaintiff and defendant Goff testified. The court then: denied Johnson's motion for a handwriting expert as almost certain to be unhelpful; denied Johnson's motion for counsel without prejudice to his renewing it if this case survives summary judgment; and reserved on defendants' motion for sanctions until the parties submitted further information for the court's review. Having now reviewed a supposedly original, though altered memorandum submitted by Johnson (dkt. #69-1), and additional exhibits presented by defendants at the hearing (*see* dkt. ##62-67), the court finds substantial circumstantial evidence that Johnson's characterizations of the events regarding the issuance of the memo are too conflicting to be credible and that Johnson more likely than not fabricated the handwritten notation on the memo. Ultimately, as elaborated below, the court finds that the assertion of forgery comes down to a question of credibility between plaintiff and Goff, a determination that falls in Goff's favor given all the oddities in plaintiff's version of events. Accordingly, the court will grant defendants' motion for sanctions and dismiss this case.

BACKGROUND

**A. Johnson's Presentation of Memorandum**

In his initial complaint dated September 24, 2021, Johnson acknowledged that he did not have a copy of his original, 2021 request for Ramadan meals or Chaplain Goff's response. (Dkt. #1, at ¶ 20.) However, on February 17, 2023, Johnson filed an amended complaint, in which he then alleged (for the first time in this court) that he had in fact received "an approval slip form Ch. Goff for [2021] Ramadan[, which] will be part of the Johnsons Exhibits." Even then, however, Johnson failed to attach a copy of this key exhibit to his amended complaint. (Dkt. #19, at ¶ 15.)

Johnson's first request for production of documents also included a request for "WSPF (Wisconsin Secure Prison Facility) memo dated 3/11/21 to Plaintiff re: Ramadan participation from Chp. Goff." (Dkt. #52-2, at p.2, ¶ 1.) On July 6, 2023, defendants responded: "No such memo exists that was sent from Chaplain Goff to Plaintiff on March 11, 2021. However, to the extent that plaintiff is requesting a copy of the memo that was sent out to all Ramadan participants by Chaplain Goff on March 11, 2021, please see attached Bates No. DOC001." (*Id.*)

Next, during his deposition on November 14, 2023, Johnson presented what he purported to be a copy of a March 11, 2021 memorandum from Chaplain Goff to all Ramadan participants with Johnson's name and cell number handwritten on the top, which he claimed shows that Goff had already acknowledged his participation in Ramadan 2021, a full month before it was scheduled to begin. Soon thereafter, defendants sent Johnson discovery requests, asking him about the source of the handwritten notation and to

3

produce the memorandum he presented during his deposition. On January 11, 2024, plaintiff produced to defendants a March 11, 2021 memorandum with "Johnson D 112C" handwritten on the top. (*See* dkt. #51, at 3; dkt. #52-1, at 4; and dkt. #71.) The writing at the top of that memorandum looks odd, like it has been traced over in blue ink, underlined in red ink, and highlighted in yellow. (*Id.*) Johnson explained in his response to defendants' interrogatories that the initial writing on the document belonged to Goff, but he wrote over Goff's handwriting after he received it because he did not know that the document would be needed for litigation. (*See* dkt. #51, at 2-3.)

## B. Defendants' Motion for Sanctions

On February 28, 2024, defendants filed a motion for sanctions, asserting that Johnson must have fabricated Goff's handwriting at the top of the March 11, 2021, memorandum before producing it during Johnson's deposition, all in an effort to make it look as though Goff confirmed his earlier request for 2021 Ramadan meals. (Dkt. #50.) In support of their motion, defendants submitted a declaration from Goff (dkt. #51), who attests that the writing on top of the memorandum is not his, nor is it consistent with how he would have returned an acknowledgement for Ramadan participation. Instead, Goff required inmates seeking overnight meal accommodations for Ramadan 2021 to submit *either* an Interview/Information Request *or* a DOC-2935 form to him *at least* 60 days before the start of Ramadan (meaning no later than February 12, 2021). (Dkt. #51, at ¶¶ 6-11.) Goff further represents again that he does not have a copy of any such request from Johnson for 2021. (*Id.*)

4

Goff also avers that upon receiving an inmate's request, his practice is to: enter the inmate's name on a list; note on the form that the inmate is on the list; make a photocopy of the sign-up request; return the original form with the verification note to the inmate; and keep a photocopy for his records. (*Id*. at ¶ 12.) Approximately one month before the start of Ramadan, Goff also drafts a memo -- two per page -- to send to *all* inmates on the participation list. (*Id*. at ¶¶ 14-15; dkt. #51-2.) After cutting the page in half, Goff writes the inmate's last name, first initial, DOC number, and cell number on the *backside* of that memorandum. (*See* dkt. #51, at ¶¶ 17-20; dkt. #51-3 (example).) Goff avers that the handwriting on the top of the memo produced by Johnson is *not* his, and he provides a sample of his handwriting for comparison. (*Compare* dkt. #52-1, at 4 (memo produced by Johnson) *with* dkt. #51-3, at 2 (Goff sample).)

Finally, defendants point out in their motion that Johnson never referred to the memo Goff allegedly sent in his initial information to Goff on April 13, 2021 (*see* dkt. #53-1, at 14), nor in his inmate complaint on April 16, 2021 (*id*. at 11). And while Johnson later asserted in his May 9, 2021, administrative appeal that he had received a reply from Goff and had a copy of the form (*see id*. at 20), he still failed to submit that evidence at the time or attach a copy to his original complaint *or* amended complaint.

C. Johnson's Response to Motion for Sanctions

Johnson now argues that just because Goff *neither* remembers *nor* has any record of Johnson sending any request until Ramadan 2021 was beginning does *not* mean that he did not make an earlier timely request to participate. With respect to the memo he later

5

produced with Goff's alleged handwriting, Johnson attests that the format changed from a half sheet to a full sheet of paper when the librarian photocopied it (dkt. #56, at 2), *and* he merely traced over Goff's handwriting at the top, not realizing that the memo might be needed in future litigation (*id*. at 3). He also points out that he was not required to include *any* proof of Goff's response along with either his inmate complaint or his pleadings in this case, and he would never have enclosed the *original* Goff memo with his inmate complaint out of fear that it might be lost during the inmate complaint process. (*Id*. at 3.)

Johnson also presented the affidavits of two fellow inmates, Robert Anderson and Anthony Kimmons, who aver they also had issues with Goff not placing *them* on the Ramadan list despite requesting that he do so (dkt. #56-9 to #56-10), as well as an affidavit from another inmate, Joshua Jones, who avers that he saw Johnson complete a request slip for Ramadan 2021 and place it in the institution's mailbox (dkt. #56-8), although Jones does not state *when* he made those observations.

**D. Evidentiary Hearing**

At an evidentiary hearing on January 24, 2025, the court admitted the declarations submitted by the parties into the record and heard testimony from both Goff and Johnson. Defendants' counsel first questioned Goff, then questioned Johnson adversely, before offering exhibits regarding their discovery communications with Johnson. Johnson also gave his own testimony and cross-examined Goff. The court denied Johnson's motion for a handwriting expert (dkt. #57), finding that the tracing Johnson did rendered it unlikely that a handwriting expert could perform a meaningful analysis of any underlying, original

6

writing, especially since printed. The court also denied Johnson's motion for court assistance in recruiting counsel to represent him (dkt. #58), finding that Johnson presented his evidence clearly and thoroughly, but it did so without prejudice, allowing for possible reconsideration the ruling if the case survived summary judgment. Finally, the court ordered Johnson to file in the court docket the original, half-sheet memorandum that he had in his possession, and directed defendants to file the exhibits admitted at the hearing.

OPINION

"A district court has inherent power to sanction a party who 'had willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). Here, the defendants have the burden to prove the factual basis for seeking sanctions by a preponderance of the evidence. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778-81 (7th Cir. 2016); *Smith v. Lind*, No. 14-cv-796-slc, 2021 WL 1546147, at *1 (W.D. Wis. Apr. 20, 2021), *aff'd sub nom. Smith v. Hautamaki*, No. 21-2004, 2023 WL 5163877 (7th Cir. Aug. 11, 2023). Having reviewed the parties' submissions and considered the testimony, this court concludes both that the preponderance of the evidence demonstrates Johnson fabricated evidence, and consistent with the court's overall practice in similar situations, dismissal with prejudice is the appropriate sanction.

I.  **Evidence of Fabricated Memorandum**

Johnson initially represented in his discovery responses to defendants that he was producing the actual memo received from Goff in 2021 (*see* dkt. #52-1, at 3), but he later testified at the evidentiary hearing that the memo he initially produced to defendants was in fact *not* the original, which was still in his possession.  After the court ordered Johnson to file what he now claimed to be the *original* memo received from Goff, Johnson filed a half-sheet of paper with printed text, fold marks, and handwriting on the front and back sides.  (*See* dkt. #69-1.)  Assuming Johnson's initial production was just a copy, the two memos contain three, obvious differences that cause the court to question Johnson's account:  (1) the purported original has a blurry logo, whereas the copy initially produced to defendants does not; (2) the handwritten notation of "Johnson D 112C" on the original memo is written and underlined in red ink, whereas the notation on the initial copy produced to defendants is written in blue ink and underlined in red ink; and (3) the underline marks and some of the letters in the two memos are different.  Moreover, neither memo contains the handwritten receipt typically used by Goff, who credibly testified that his handwritten notation *always* includes the inmate's first initial and inmate number, which are missing on *both* memos produced by Johnson.  Goff also credibly testified that he writes his notation on the *backside* of the half-sheet sized memo, like addressing a mailing, not on the front as it appears on Johnson's memorandum.  Finally, while Johnson's administrative appeal states that he has a copy of a "form" and his amended complaint

alleges that he has a copy of an "approval slip," Johnson did not reference the supposed March 2021 memo *or* even produce a copy of it *until his deposition*.

Defendants' assertion of fabrication in this case comes down to credibility, and unfortunately for Johnson, his questionable version of events and the multiple, traced memos that he passed off as originals means the preponderance of the evidence weighs against him.

## II.   Dismissal as Sanction

Defendants contend that Johnson's conduct warrants dismissal with prejudice *and* issuance of a strike under 28 U.S.C. § 1915(g).  Because Johnson's misconduct is very serious, a lesser sanction would appear to be inadequate.  *See Goodvine v. Carr*, 761 F. App'x 598, 601 (7th Cir. 2019) (citing *Secrease*, 800 F.3d at 402) ("Courts have 'sound discretion' to dismiss suits with prejudice as a reasonable sanction for falsifying evidence, which 'undermines the most basic foundations of our judicial system.'"); *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1010 (N.D. Ill. 2005), *aff'd*, 200 F. App'x 592 (7th Cir. 2006) (Collecting cases in support of holding that "a district court may dismiss an action with prejudice to sanction appropriately egregious misconduct by a party—whether it be in the form of flagrant disregard of discovery orders, or destruction of relevant evidence, or, as here, fraudulent fabrication of documents and perjury.").

While "[d]ismissal pursuant to the court's inherent authority can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false," *Ramirez*, 845 F.3d at 776 (quoting *Secrease*, 800 F.3d at

4001), courts must consider other sanctions before resorting to dismissal. *Rivera v. Drake*, 767 F.3d 685, 786 (7th Cir. 2014); *see also Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019) ("[S]anctions, including dismissal, must be proportionate to the circumstances. Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case.").

In this case, however, a monetary sanction would be meaningless. In particular, even though Johnson is not indigent and paid the full filing fee in this case, he had only a modest amount in his account upon filing this case (*see* dkt. #6), making it unlikely that money damages would impact or deter similar misconduct in the future. Further, merely excluding Johnson's fabricated evidence is akin to an adverse evidentiary ruling rather than a sanction, and it again would accomplish nothing because Johnson would continue to argue through his own testimony that Goff sent him a memorandum confirming his 2021 Ramadan participation. *Smith*, 2021 WL 1546147, at *11. Accordingly, after considering the totality of the circumstances, this court finds that dismissal of this lawsuit is a proportionate sanction for Johnson's fabrication of key evidence and related misrepresentations during the discovery process, and again before this court.

The court also will designate this dismissal as a strike pursuant to 28 U.S.C. § 1915(g), which authorizes strikes for frivolous or malicious filings, regardless of whether a prisoner is proceeding in forma pauperis. *Goodvine*, 761 F. App'x at 602 (affirming district court's dismissal of case and assessment of strike as sanctions for fabricated evidence).

ORDER

IT IS ORDERED that:

1. Defendants' motion for sanctions (dkt. #50) is GRANTED, and this case is DISMISSED with prejudice.

2. Plaintiff's motion to appoint a handwriting expert (dkt. #57) and motion for court assistance is recruiting counsel (dkt. #58) are DENIED.

3. The clerk of court is directed to enter judgment in accordance with this order, close this case, and record a strike under 28 U.S.C. § 1915(g).

Entered this 21st day of May, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge